IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    :    CASE NO. 08-06509
                                          :
ENRIQUE JOSE QUESADA VIGO;                :
MONICA GLADYS PAGAN MUTT                  :    CHAPTER 13
                                          :
    Debtors                               :

## OPINION AND ORDER

Before the court is Jorge L. González Fernández's (hereinafter referred to as the "Creditor") motion requesting that the post-petition commercial rental expense be classified as an administrative expense claim pursuant to Section 503(b)(1)(A) of the Bankruptcy Code. Enrique José Quesada Vigo and Mónica Gladys Pagán Mutt (hereinafter referred to as the "Debtors") argue that Creditor's claim is a general unsecured claim since it fails to satisfy the standard that such rental payments benefit the estate under §503(b)(1)(A). For the reasons set forth below, this court determines that the commercial lease agreement was unexpired at the time of the bankruptcy filing and the same was deemed rejected one-hundred and twenty days (120) after the order of relief pursuant to Section 365(d)(4) of the Bankruptcy Code. Creditor's claim is an administrative expense pursuant to Section 365(d)(3) of the Bankruptcy Code for the rent corresponding to the 120 days after petition date.

### Background

Petition and Schedules

Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on September 30, 2008. Q&P Investments, Inc. d/b/a Five Star Laundry & Tailor Shop (the "Corporation") filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on September 26, 2008 (Case Number 08-06392). Pursuant to a Corporate Resolution filed with the court on September 26, 2008, the Corporation only has two (2) members, namely, Enrique José Quesada Vigo and his wife Mónica Gladys Pagán Mutt (Docket No. 2 in case #08-06392), that is, the Debtors herein. The 341 meeting of creditors was scheduled for November 10, 2008 (Docket No. 7) and was subsequently continued

to December 5, 2008 (Docket No. 11), January 13, 2009 (Docket Nos. 28, 30& 38), February 10, 2009 (Docket No. 44), March 13, 2009 (Docket No. 50) and closed on March 17, 2009 (Docket No. 52).

Creditor's claim was not included in Debtors' schedules under the Chapter 13 case (Docket No. 14). However, the Corporation on October 24, 2008, in its Schedule F-Creditors Holding Unsecured Nonpriority Claims- listed Creditor with a net debt of $14,185.00 for a commercial lease (the deposit for the amount of $6,500 was subtracted from the gross debt of $20, 685.00) (Docket No. 10 in case number 08-06392). The Corporation in its Schedule F also listed a commercial loan with Doral Bank in the amount of $558,576.12, partially guaranteed with collateral located at Calle Palma Real #130, Ciudad Jardín 3 Toa Alta, PR 00956 and equipment (Docket No. No. 10 in case number 08-06392). The Corporation in the Statement of Financial Affairs included the lawsuit based on eviction proceedings filed by Creditor in state court (Docket No. 10 in case number 08-06392). On November 24, 2008, the Corporation amended its Schedule B- Personal Property to include a detailed list of inventory for an estimated amount of $100,000.00 which was not allocated amongst the inventory items (Docket No. 14). Subsequently, the Corporation on December 11, 2008 amended its Schedule F to eliminate Doral Bank as a creditor holding an unsecured non-priority claim (Docket No. 16 in case number 08-06392). The Corporation on December 11, 2008 amended its Schedule B to eliminate from the personal property of the estate, the inventory which was previously listed in the amount of $100,000.00 (Docket No. 18 in case number 08-06392).

Subsequently, Debtors amended their Schedule B- Personal Property on December 16, 2008 (Docket No. 33) to include a detailed list of inventory for an estimated total amount of $100,000.00. However, the total amount of $100,000.00 was not allocated amongst the different inventory items. On December 19, 2008, Debtors filed an amended Schedule F- Creditors Holding Unsecured Nonpriority Claims- and amongst the various amendments included a commercial loan for $568,306.87.00, partially guaranteeing collateral located at Calle Palma Real #130, Ciudad Jardín 3 Toa Alta, PR 00956 and equipment with Doral Bank pertaining to account number 9221100103 and a disputed chattel lien for an unknown amount in favor of Doral Bank or to its presentation (Docket No. 39). Debtors on February 10, 2008 amended Schedules A and C and the Statement of Financial

2

Affairs (Docket No. 47). Schedule A was amended to include the Corporation as a pending bankruptcy case filed by any spouse, partner or affiliate of this debtor (Form B1). Question number eighteen (18) of the Statement of Financial Affairs was amended to include Debtors as owners of 5% or more of the voting equity securities of the Corporation within six (6) years preceding the commencement of this case. Debtors also included information pertaining to a lawsuit for collection of monies and eviction proceedings commenced by Creditor in the Commonwealth of Puerto Rico Court of First Instance- Carolina Part ("state court") in which Debtors were summoned (Official Form B7) (Docket No. 47). On May 13, 2009, Debtors amended Schedules B and D (Docket No. 83). Schedule B was amended to clarify that the inventory for the amount of $100,000.00 is subject to a chattel mortgage with Doral Bank (account number 9221100103) in which Debtors consented to the lifting of the stay for such chattel mortgage and Scheduled D was amended to clarify that the chattel mortgage was in the amount of $141,000.00.

Eviction and Administrative Claim

On December 15, 2008, Creditor filed an "Urgent Motion To Compel Debtors To Evict Commercial Property" in which it presented the following allegations: (i) Debtors, in their personal capacity signed a Commercial Property Lease Agreement (which has not expired) on July 19, 2005; (ii) Debtors have failed to comply with the terms of the Commercial Property Lease Agreement (the "contract") since they have failed to make the monthly lease payments since July 2008; (iii) Debtors owe creditor $42,616.38 in arrears for lease payments; (iv) in September 2008, Creditor filed a complaint in state court against Debtors for collection of monies and eviction proceedings since Creditor was not notified of the bankruptcy filing; (v) on November 3, 2008 a partial judgment was rendered by state court and notice was given on November 6, 2008; (vi) Debtors have not removed the laundry equipment at Creditor's commercial real estate property and have failed to include him as a creditor on their bankruptcy petition; (vii) Creditor has been unable to exploit his property (in an income producing manner) since the Debtors' laundry equipment is situated in the same; and (viii) Creditor requests that post-petition rental arrears (from the bankruptcy petition filing to the date the property is surrendered to Creditor) be paid to him as an administrative expense. (Docket No. 31). On December 18, 2008 the court granted interested parties eleven (11) days to oppose to Creditor's

Urgent Motion To Compel Debtors To Evict Commercial Property," and if there was no opposition then the motion will be deemed granted without further notice or hearing (Docket No. 36). On December 19, 2008, Doral Bank filed a motion in compliance with the order (Docket No. 36) informing the parties: (i) that the laundry equipment initially listed in the Corporation's Schedule B was subsequently recognized as Debtors' property and included in Debtors' amended Schedule B filed on December 16, 2008; and (ii) that such laundry equipment is part of its collateral and as such will be surrendered to secured creditor Doral Bank (Docket No. 37). Doral Bank requested that it be allowed to coordinate with Creditor the removal of the equipment from Creditor's commercial premises (Docket No. 37). The court on December 23, 2008 granted Doral Bank's motion requesting that equipment be returned to the same (Docket No. 42). Debtors did not reply to the order.

On February 5, 2009, Creditor filed a motion entitled, "Request For payment Of Administrative Expense Under §503(b)(1) Of BAPCPA," in which it requests that the amount of $28,410.92, which consists of four (4) monthly payments of $7,102.73 for the months of October, November and December 2008 and the month of January 2009, be paid to him as an administrative expense necessary for the preservation of the estate, pursuant to Section 503(b)(1) of the Bankruptcy Code (Docket No. 45). These four (4) months correspond to the 120 days after the petition date. On February 5, 2009, Creditor filed proof of claim #14-1 in the amount of $26,308.19 for services performed pre-petition, which consisted of monthly rental arrears for $7,102.73 for the months of July, August and September of 2008 plus $5,000.00 for contractual fees related to the state court collection of monies and eviction proceedings lawsuit. On February 10, 2009, Debtors filed a motion requesting a thirty (30) day leave to file a reply to the Creditor's request for post-petition rental expenses to be classified as administrative expenses pursuant to Section 503(b)(1) of the Bankruptcy Code (Docket No. 48).

On February 19, 2009, Debtors filed a motion requesting to vacate and set aside order (Docket No. 36) pursuant to Fed. R. Civ. P. 61(b)(1) & (b)(6) and Fed. R. Civ. P. 55 (c), made applicable under Fed. R. Civ. P. 7055(c) (Docket No. 55). In said motion, Debtors argue that Creditor holds a general unsecured claim in concept of an expired commercial lease agreement, which may not be assumed because the same had expired prior to the filing of the bankruptcy petition. (Docket No. 55).

Subsequently, on March 6, 2009, Creditor replied to Debtors' motion requesting the court's order to be vacated and set aside and presented the following arguments: (i) at the time of the filing the lease was unexpired since Debtors had failed to surrender the commercial premises to Creditor; (ii) at the time of the filing an order of eviction had not been granted; (iii) the state court complaint in paragraph 3 refers to individual debtors as the current lessees of the commercial space and requested in the complaint's prayer that Debtors be ordered to pay the amounts that become due each month until the eviction order is issued and executed; and (iv) at the time of the filing the Debtors had their laundry equipment inside Creditor's commercial property which supports Creditor's allegation that the lease was unexpired at the time of the filing (Docket No. 63). On April 8, 2009, the court issued an order and notice scheduling a hearing for May 15, 2009 to discuss certain issues, including Debtors' motion to vacate order (Docket No. 55) and Creditor's reply (Docket No. 63).

The court made the following determinations at the hearing: (i) Debtors' motion (Docket No. 55) to vacate and set aside this court's previous order (Docket #36) was granted based on the reasons stated in Debtors' motions; (ii) the pre-petition amounts owed will be allowed as a general unsecured claim; and (iii) the post-petition amounts will be allowed as an administrative expense only to the extent the use and occupancy of the commercial premises benefitted the estate (Docket No. 91). At the hearing, Creditor argued that the use and occupancy of his commercial premises benefitted the estate, "[b]ecause it was property of the estate. It was equipment with a value that was listed in $100,000.00 that was inside those premises and was property of the estate. So, Debtor acted as it was–it was– taking care or protecting property of the estate." (Docket No. 98, pg. 8). Creditor stated the following at the hearing: (i) "...Debtors were in possession in the sense that there was equipment inside the premises, Debtor had the keys of the premises, and the landlord had no access at all to the premises. He could not rent it, he could not enter, he could not sell the property inside that premise" (Docket No. 98, pg. 7); (ii) four (4) months (from October to January) had elapsed since the bankruptcy petition to the date the commercial property was turned over or control was turned over (Docket No. 98, pgs, 8-9); and (iii) "[i]t was not until sometime in January that Doral began some kind of communication with my client to evaluate and appraise the equipment and to try and do something with the equipment. And it is by the end of January that Doral apparently entered in an

5

agreement with a person that was interested in buying the equipment" (Docket No. 98, pg. 15). Debtors stated the following at the hearing: (i) that after some confusion it was determined that Debtors in their personal capacity were the lessees of the commercial property (Docket No. 98, pgs. 10-11); (ii) in October, Debtors turned over the keys of the commercial property to the Chapter 7 Trustee; (iii) Debtors could not remove the laundry equipment because the same belonged to Doral since it had a chattel mortgage on the equipment and this information was relayed to Creditor's attorney Novas Debien who filed the lawsuit for eviction proceedings in state court (Docket No. 98, pg. 12); and (iv) Debtors after October never regained possession of the premises (Docket No. 98, pg. 12). The court granted Creditor thirty (30) days to move the court and Debtors thirty (30) days to reply (Docket No. 91).

On June 30, 2009, Creditor filed a memorandum (Docket No. 104) making the following factual allegations: (i) "[t]he monthly payment that was agreed upon increased with the passing of the years and at the time of the filing of the captioned petition it was $7,102.43 due on the first day of each month payable within the first five days of each month;" (ii) "[t]he Chapter 13 plan was filed on November 24, that is almost two (2) months after the filing of the Petition, and that plan provided for direct payments to Doral Bank and made no special provision for the laundry equipment (Docket #20) At that moment, nothing in the Schedules or plan indicated that Doral Bank had a lien over the laundry equipment, still not listed anywhere but still occupying Mr. González Fernández's commercial space;" (iii) "...at the moment of the filing of the 'Urgent Motion' Debtors has not yet provided for any treatment to Doral Bank and has not even listed the equipment inside the commercial space as part of the assets in Schedule B;" (iv) "[a]t the 341 Meeting of Creditors, held on December 2, Debtors tendered in the keys of the commercial space owned by Mr. González Fernández to the Chapter 7 Trustee Wilfredo Segarra Miranda. Nevertheless, the Trustee tendered the keys of the commercial space to the undersigned on December 4, after the determination that the laundry equipment was going to be abandoned since it was owned by Debtors in their personal capacity;" (v) "[o]n December 16, Debtors filed an amended plan providing for the first time for the surrender of property to Doral Bank, nevertheless, the only accounts listed in Schedule D for Doral Bank were for "mortgage loans" without any reference to the equipment as part of the property over

6

which said institution had a lien (Docket # 32). The laundry equipment was listed for the first time in Amended Schedule B (Docket #33);" (vi) Creditor, "...was voluntarily or involuntarily taking care of equipment allegedly valued in $100,000.00 that belonged to the bankruptcy estate and would be used eventually to reduce the estate's debts;" and (vii) "...post petition months that elapsed until the equipment was taken care of by Doral Bank, that is January 2009, should be considered as administrative expense for the use and occupancy of the premises by property of the estate that was essential for Debtor's reorganization in Chapter 13. The lack of care/diligence by Mr. González Fernández during those months facing the reality that Debtors and Doral Bank were doing nothing in order to protect and/or remove and/or sell it would have unchained on the deterioration of said equipment" (Docket No. 104).

Thereafter, Debtors on July 28, 2009 filed their memorandum (Docket No. 112) in which it made the following factual allegations: (i) the commercial lease entered between Creditor and Debtors "... had expired by its own terms prior to the filing of the bankruptcy petition. Under local law the contract is the Law that rules the Agreement between the parties" (Docket No. 112); (ii) "... the resolutory condition contained in paragraph seven (7) expressed that the lease payment was to be made within the first five (5) days of each month and that should debtor incur in arrears of two (2) or more consecutive payments and/or three (3) or more payments whether consecutive or not, the contract lease agreement would be void and null" ("La falta de pago del canon de arrendamiento en los primeros cinco (5) días de cada mes por dos (2) meses consecutivos o en más de tres (3) ocasiones aunque no sean consecutivas, hará que este contrato quede automáticamente resu[e]lto y terminado...") (Docket No. 112, Exhibit I); (iii) "Debtor being in arrears as expressed herein for over two (2) months terminated the original lease agreement and instead there was a month by month lease pursuant to 31 L.P.R.A. section 4092," and the "lease was not assumed during the bankruptcy" (Docket No. 112); (iv) "Prior to the filing of both bankruptcies, creditor JGF was informed by Debtors of the fact that there was a lien securing the laundry equipment" ("No obstante ello dependerá de cuán rápido mi cliente pueda conseguir un nuevo inquilino, habiendo en este momento por lo menos dos personas interesadas en el local; ello a su vez dependerá de la cooperación del Sr. Quesada en dar acceso al local para fines de mostrarlo a terceras personas, y de agilizar con la institución financiera

7

que tiene los equipos del 'laundry' pignorados a que los remuevan del local lo antes posible" (Docket No. 112, Exhibit II, Letter dated August 25, 2008 from attorney José Luis Novas Debién, addressed to attorney Marilyn Váldes Ortega) ("El 26 de agosto dialogamos por teléfono con relación a nuestra carta del 25 de agosto de 2008. Usted me confirmó que en efecto había sido contratada por el Sr. Vigo para presentar un caso de quiebra ante la Corte de Quiebras; me indicó que lo más aconsejable era esperar a que una vez est[u]viese radicado el caso, se estableciera comunicación inmediata con el síndico, en aras de poder viabilizar y agilizar la entrega del local a mi cliente, lo cual implicaba también la participación y relevo del banco que tiene las maquinarias pignoradas") (Docket No. 112, Exhibit III, Letter dated September 5, 2008 from attorney José Luis Novas Debién, addressed to attorney Marilyn Váldes Ortega); (v) "Despite the fact that creditor JFG knew of the lien over the laundry equipment and that it was not up to the Debtor to remove the same, JGF did nothing for four (4) months that is until February 5th, 2009" (Docket No. 112); "[t]he burden of proving the benefit of the estate was never met" (Docket No. 112); (vi) "[o]n or around mid October, 2008, shortly after the filing of the Chapter 7 and 13 bankruptcy petitions debtor handed the keys to the property to the chapter 7 Trustee and never regained possession of the premises;" and (vii) "the estate was never benefit[t]ed for the time that the laundry equipment stayed on creditor's JGF commercial space" (Docket No. 112). Debtors' Chapter 13 plan was confirmed on September 10, 2009 (Docket Nos. 118 & 119).

Applicable Law and Analysis

*Commercial Lease Agreement*

Article 1445 of the Puerto Rico Civil Code provides, "[t]he lessee is obliged: (1) to pay the price of the lease in the manner agreed upon; (2) to use the thing leased as a diligent father of a family would, applying the same to the use agreed upon; and, in the absence of an agreement, to the use which may be inferred from the nature of the thing leased according to the custom of the land; (3) to pay the expenses arising from the instrument constituting the contract." 31 L.P.R.A. §4052. Article 1446 of the Puerto Rico Civil Code establishes, "[i]f the lessor or lessee should not comply with the obligations mentioned in sections 4051 and 4052 of this title, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force." 31

L.P.R.A. §4053. Furthermore, Article 1459 of the Puerto Rico Civil Code establishes, "[t]he lessor may judicially dispossess the lessee for any of the following causes: (1) upon the expiration of the conventional period or the one fixed for the duration of leases in sections 4083 and 4092 of this title; (2) default in payment of the price agreed upon; (3) infraction of any of the conditions stipulated in the contract; (4) when the lessee employs the thing leased in uses or services not stipulated and which cause the same to be impaired, or when he does not comply, with regard to its use, with the provisions of subsection (2) of section 4052 of this title." 31 L.P.R.A. §4066.

The principal duty of a lessee under a lease agreement is to make the rental payments in the form, manner and conditions established per the lease agreement. Mora Development Corp. v. Sandin, 118 D.P.R. 733, 741 (1987). If the lessee is in default of the monthly rental payments under a lease agreement, then the lessor pursuant to Article 1446 of the Puerto Rico Civil Code, may request (i) the rescission of the lease agreement and indemnity for losses and damages or (ii) maintain the lease agreement in force and request indemnity for losses and damages. 31 L.P.R.A. §4053. If the lessor chooses to rescind the lease agreement, then Article 1459 of the Puerto Rico Civil Code, provides eviction as a remedy to the lessor. 31 L.P.R.A. §4066. If the lessor wants to rescind the lease agreement he may opt to rescind the same either by a summary eviction proceeding or by an ordinary proceeding. Rossy v. Del Valle, 34 D.P.R. 726, 734-736 (1925). See also Mora Development Corp. v. Sandin, 118 D.P.R. 733 (1987), 18 P.R. Offic. Trans. 847, 856, P.R., April 29, 1987. By its nature, "the resolutory action is inherent to the unlawful detainer action." Id. at 856 citing Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1960, T. XXIV, Vol. 1, p. 597; See also Rossy v. Del Valle, 34 D.P.R. 726, 734- 736 (1925). However, it is also important to consider that the, "...mere fact that tenants engaged in an ongoing violation of certain material clauses in a lease agreement does not, per se and absent affirmative action by the landlords, terminate the contract and void their right to remain in the property" Rodriguez v. Republic of Costa Rica, 139 F. Supp. 2d 173, 181 (D.P.R. 2001).

Articles 1459 and 1077 of the Puerto Rico Civil Code, 31 L.P.R.A. §§4066, 3052 must be read in conjunction, with particular emphasis on "the right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him." 31 L.P.R.A. §3052; See Campos del Toro v. Tribunal Superior de Puerto Rico, 75 D.P.R.

370, 375 (1953). The eviction proceeding which stems from a breach of contractual terms, such as default in payment on the price agreed upon constitutes a resolutory action pursuant to Article 1077 of the Puerto Rico Civil Code, 31 L.P.R.A. §3052. In particular, the lease agreement is successive in nature, meaning that the lessor's obligation of providing the lessee the use and occupancy of the thing, is fulfilled in a continuous manner serving as the cause of the lessee's obligation to make the rental payments. Id at 376. The Puerto Rico Supreme Court in <u>Campos del Toro</u> held that even after filing an eviction complaint, the lease agreement is still in force in conformity with its terms and during the period contracted in the lease agreement until there is a final judgment resolving the contract. Id at 376-377.

Creditor pursuant to Article 1459 of the Puerto Rico Civil Code (31 L.P.R.A. §4066) and Articles 620 et sec. of the Puerto Rico Code of Civil Procedure (32 L.P.R.A. §§2821 et sec.) filed an eviction (unlawful detainer) complaint on September 8, 2008 to dispossess the Debtors from its premises due to Debtors' default in the monthly rental payments. ("La parte demandante interesa recobrar la posesión del local al cual se alude anteriormente y desalojar o desahuciar del mismo a la parte demandada por la falta de pago de dichos inquilinos del canon mensual pactado en la forma y con la puntualidad pactada")(Docket No. 63, Complaint filed in state court, paragraph 5). The state court rendered a partial judgment on November 3, 2008 which was notified to the parties on November 6, 2008 by which it determined that the unlawful detainer complaint was sustained (ha lugar) and that the collection of monies of controversy would continue pursuant to an ordinary proceeding. The partial judgment rendered by the state court did not resolve the lease agreement, thus the same is still in force and in conformity with its terms until there is a final state court judgment resolving the contract.

The court must first determine if the commercial lease agreement was terminated pre-petition or post-petition since it controls the outcome of the case. If the lease was terminated pre-petition, then the analysis is performed pursuant to Section §503(b)(1) of the Bankruptcy Code. However, if the lease was assumed or rejected post-petition, then the court needs to examine the interplay between Sections 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code, given that Section 365(d)(3) provides a special administrative claim priority to post-petition rent due under a non-residential lease,

notwithstanding Section 503(b)(1) of the Bankruptcy Code. 11 U.S.C. §§365(d)(3) & 365(d)(4).

In the instant case, the court concludes that the lease agreement was unexpired at the time (September 30, 2008) of the filing of the bankruptcy petition since the state court had not rendered a final judgment resolving the lease agreement. Moreover, the court finds that the lease was rejected post-petition, namely one-hundred and twenty days (120) after the filing of the bankruptcy petition in conformity with Section 365(d)(4) of the Bankruptcy Code.

*Interplay between §365(d)(3), §365(d)(4) & §503(b)(1)*

Section 365(d)(3) of the Bankruptcy Code requires that, "[t]he trustee shall timely perform the obligations of the debtor... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. §365(d)(3). "This provision was added to the Code to 'alleviate the unique financial strains the Code placed upon the commercial lessor,' namely that the lessor was formerly unable to collect rent from the debtor-tenant while at the same time prevented from taking any action to re-let the premises." In re Iron Age Corp., 378 B.R. 419, 423 (Bankr. D. Mass. 2007) citing In re Pyxsys Corp., 288 B.R. 309, 312 (Bankr. D. Mass. 2003); See also In re Almac's, Inc., 167 B.R. 4, 7 (Bankr. D.R.I. 1994) ( "...§365(d)(3) was established to guarantee that landlords receive current lease payments for current services, pending the Debtor's decision to assume or reject its nonresidential leases") Moreover, Section 365(d)(4) provides that, "...an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor; if the trustee does not assume or reject the unexpired lease by the earlier of–(i) the date that is 120 days after the date of the order of relief; or (ii) the date of the entry of an order confirming a plan." 11 U.S.C. §365(d)(4).

The majority of the courts have held that Section 365(d)(3) grants the lessor "automatic administrative expense treatment, independent of section 503(b), which ordinarily governs allowance of administrative expenses, for the amount called for by the lease." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶365.04[3][g][2] (15th ed. 2009); See In re Iron Age Corp., 378 B.R. 419, 423 (Bankr. D. Mass. 2007)("...the 'notwithstanding Section 503(b)(1)' clause has eliminated the so-called 'benefits test' applied by courts in determining whether an expense is

11

necessary to preserve the estate"); In re Pyxsys Corp., 288 B.R. 309.

In the instant case, Debtors nor the Corporation included the commercial lease agreement as an unexpired lease in their Schedule G-Executory Contracts and Unexpired Leases. Debtors failed to assume or reject the commercial lease agreement within the period (specifically 120 days) provided in conformity with Section 365(d)(4)(A)(i) of the Bankruptcy Code. The commercial lease agreement is deemed rejected pursuant to Section 365(d)(4)(A)(i), thus Creditor has a claim for administrative expense treatment for one hundred twenty (120) days after the date of the filing of the bankruptcy petition (September 30, 2008). The prepetition amounts owed and claimed in proof of claim number 14-1 is a general unsecured claim.

## Conclusion

In view of the foregoing, the court concludes that the commercial lease agreement was unexpired at the time of the bankruptcy filing and the same was deemed rejected one-hundred and twenty days (120) after the order of relief in accordance with Section 365(d)(4) of the Bankruptcy Code. Thus, Creditor has an administrative expense claim for one hundred twenty (120) days in accordance with Sections 365(d)(3) and 365(d)(4) of the Bankruptcy Code. The prepetition amounts owed are a general unsecured claim.

Judgment shall be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 16th day of November 2009

ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge